# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Manchester United Technologies, LLC,

               Plaintiff,

v.

Kinsale Insurance Company,

               Defendant.

_____/

Case No. 24-cv-13221

Judith E. Levy
United States District Judge

Mag. Judge Anthony P. Patti

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [21], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23], AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE [28]

This is an insurance coverage dispute under a first-party commercial property policy that Defendant Kinsale Insurance Company issued to Plaintiff Manchester United Technologies, LLC to insure a warehouse located in Detroit, Michigan. The parties disagree about whether the policy covers losses resulting from a partial loss of electrical power to Plaintiff's facility in January 2024. The parties filed cross-motions for summary judgment with each side asking the Court to

resolve this dispute in its favor. Defendant also moves to strike an affidavit that Plaintiff filed with its reply brief.

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 21) is DENIED, Defendant's motion for summary judgment (ECF No. 23) is GRANTED, and Defendant's motion to strike the affidavit of Sulaiman Salam (ECF No. 28) is DENIED AS MOOT.

## I.   Background

### A.   Relevant Policy Terms

Defendant issued a commercial property insurance policy to Plaintiff for the period of February 24, 2023 to February 24, 2024. (ECF No. 24-2, PageID.400.) The policy covers a warehouse located at 6387 E. Nevada Avenue in Detroit, Michigan. (*Id.*) The building houses equipment used to grow cannabis. (ECF No. 21-2, PageID.113; ECF No. 24-4, PageID.497.)

The policy's Building and Personal Property Coverage Form states that Defendant will pay for "direct physical loss of or damage to Covered Property[1] at the [identified] premises . . . caused by or resulting from any

---

[1] "Covered Property" includes buildings, fixtures, permanently installed equipment, and certain personal property, among other things. (*See* ECF No. 24-2, PageID.416.)

2

Covered Cause of Loss." (ECF No. 24-2, PageID.416.) "Covered Cause of Loss" is defined by the policy to mean "direct physical loss unless the loss is excluded or limited in this policy." (*Id.* at PageID.404, PageID.418.)

The policy includes a Utility Services exclusion that provides:

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

* * *

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

> (1) Originates away from the described premises; or

> (2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

3

> But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

(*Id.* at PageID.404–405.)

### B.   Plaintiff's Claim for Coverage

At some point after business closed on Friday, January 12, 2024, "a primary line to a 3 phase transformer bank servicing the [insured] building broke, resulting in the loss of one phase of the 3 phase service to the building." (ECF No. 24-4, PageID.497 (report by Plaintiff's expert).) Plaintiff was alerted to the loss by a call from its alarm company (Guardian) "notifying of a power loss alarm" at around 1:00 or 2:00 am on the morning of Saturday, January 13, 2024. (*Id.*) "When employees of the facility arrived at the building they discovered a partial loss of power and that certain pieces of equipment in the building were not operating or not operating properly." (*Id.*)

As of January 12, 2024, power to the premises was supplied by DTE. (ECF No. 24-6, PageID.521.) "The DTE distribution lines energizing the Nevada Avenue area originated from an off-premises,

nearby substation." (*Id.*) DTE restored "[f]ull electrical service to the building" on or about January 16, 2024. (ECF No. 24-4, PageID.497.)

On March 20, 2024, several individuals convened at the insured property for an on-site investigation. (ECF No. 21-9, PageID.303.) The attendees included several engineers employed by Nederveld FE—a firm retained by Defendant to "verify the cause of loss." (ECF No. 21-9, PageID.303 (4/4/24 Nederveld Report).) The attendees also included Sulaiman Salam of Temperature Repair LLC. (*Id.*)

Defendant informed Plaintiff that it was denying coverage for the claimed loss through a letter dated November 26, 2024. (*See* ECF No. 21-4.) The letter explained that the Utility Services exclusion precluded coverage for the claim. (*See id.* at PageID.201–202.)

As part of this litigation, Plaintiff retained a forensic engineer (Richard W. Kovarsky) to offer his opinion "regarding the cause of this loss," among other things. (ECF No. 24-4, PageID.496, PageID.506.) Mr. Kovarsky produced an expert report dated July 24, 2025, in which he concluded, among other things, that:

- "The loss was the result of a failure of a high voltage power line that provided 3 phase electrical service to the subject building."

- "The failure of the high voltage conductor resulted in the immediate and concurrent direct physical damage to equipment and/or component parts located at the loss location."

- "The failure of the high voltage conductor occurred between 2 utility poles located on the property of the loss location."

(*Id.* at PageID.506.) Mr. Kovarsky further opined that the "failure was simply a conductor or wire breaking and did not involve any other utility equipment that was not located on the property." (*Id.* at PageID.503.)[2]

The record also includes an affidavit containing a sworn statement by Sulaiman Salam, who owns the company (Temperature Repair) that was "involved in the repair and replacement of the HVAC equipment damaged at Plaintiff's business." (ECF No. 26-2, PageID.597.)[3] In his February 3, 2026 affidavit, Mr. Salam states that "it appeared that in observing the damaged equipment, that acid burnout had ensued after the loss of a single phase of the electrical service, causing high heat." (*Id.* at PageID.598.) Mr. Salam also indicated that "[a]cid burnout occurs

---

[2] Mr. Kovarsky did not personally examine the equipment involved in the loss, because he was retained after it was repaired and/or destroyed. (*See* ECF No. 24-4, PageID.503.) His conclusions are similar to those reached by the forensic engineering experts who were retained by Defendant for purposes of this litigation. (*See* ECF No. 24-6, PageID.523.)

[3] Defendant has moved to strike Mr. Salam's affidavit. (*See* ECF No. 28.)

when containments [sic], moisture, or high heat enter the refrigeration system causing the oil to break down and form inorganic acid." (*Id.*) "The high heat will cause the compressor to break down." (*Id.*) Mr. Salam opined that "[t]his is an ensuing event from the loss of power." (*Id.*)

### C.   Procedural History

Plaintiff filed this lawsuit on December 3, 2024. (*See* ECF No. 1.) It asserts a single claim for breach of contract, citing Defendant's alleged "refus[al] to pay [Plaintiff] for its insured losses." (ECF No. 6, PageID.18.)

On April 14, 2025, the Court entered a Scheduling Order that established deadlines for expert disclosures[4] and for completing discovery. (ECF No. 18.) Certain deadlines were extended by the stipulation of the parties and with the Court's approval. (ECF No. 19.)

Plaintiff filed its motion for summary judgment, memorandum in support, and supporting exhibits on January 9, 2026. (ECF No. 21.) On January 28, 2026, Defendant filed a motion for summary judgment (ECF No. 23) along with a single brief (with supporting exhibits) in support of

---

[4] Plaintiff provided Defendant with a report by its expert (Mr. Kovarsky) on July 24, 2025. (ECF No. 24-4.) Defendant provided Plaintiff with a report by its own experts on October 20, 2025. (ECF No. 24-6.) These reports were exchanged by the parties in a timely manner and were timely submitted to the Court as summary-judgment exhibits.

its motion and in opposition to Plaintiff's motion (ECF No. 24). On February 11, 2026, Plaintiff filed a reply in support of its motion (ECF No. 26) and a response to Defendant's motion (ECF No. 27). Plaintiff's reply included the affidavit by Sulaiman Salam referenced above. (*See* ECF No. 26-2.) Defendant filed a reply in support of its motion on February 25, 2026. (ECF No. 29.)

On February 25, 2026, Defendant moved to strike Mr. Salam's affidavit. (ECF No. 28.) The motion to strike is fully briefed. (ECF Nos. 31, 32.)

## II.  Legal Standards

### A.  Motions for Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

Where, as here, both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

The parties present the court with conflicting issues of contractual interpretation in their motions. "[D]isputed issues of contractual interpretation can be resolved at summary judgment on the basis that they are questions of law." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 595 (6th Cir. 2001). Further, "genuine issues of material fact do not exist simply because opposing litigants argue for different interpretations of the same contractual provision." *Id.* at 594–95 (citing *Tenn. Consol. Coal Co. v. United Mine Workers of Am.*, 416 F.2d 1192, 1199 (6th Cir. 1969)).

## B.   Interpretation of Insurance Contracts

The parties agree that Michigan law governs the legal questions presented by their cross-motions for summary judgment. (*See* ECF No. 24, PageID.380; ECF No. 27, PageID.613–614.) When analyzing the scope of insurance policy coverage under Michigan law, the traditional principles of contract and insurance law apply. *Radenbaugh v. Farm Bureau Gen. Ins. Co.*, 240 Mich. App. 134, 138 (2000)). These principles include the following:

> The construction and interpretation of an insurance contract is a question of law for a court to determine. *Henderson v. State Farm Fire & Cas. Co.*, 460 Mich. 348, 353, 596 N.W.2d 190 (Mich. 1999). A court must discern the parties' intent by reading the policy as a whole and giving effect to all terms according to their ordinary and plain meaning. *Radenbaugh*, 240 Mich. App. at 138, 610 N.W.2d 272. Any ambiguities will be construed against the insurer and in favor of the insured. *Id.*

*Orchard v. Phoenix Ins. Co.*, 146 F. Supp. 3d 879, 885 (E.D. Mich. 2015).

This case involves a dispute regarding the applicability of a policy exclusion. In assessing whether an exclusion applies:

> A court must first consider whether coverage exists and then whether an exclusion precludes coverage. *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 668, 443 N.W.2d 734 (Mich. 1989). It is the insured's burden to establish that his claim falls within

10

the terms of the policy. *Heniser v. Frankenmuth Mut. Ins.*, 449 Mich. 155, 172, 534 N.W.2d 502 (Mich. 1995). Conversely, it is the insurer's burden to prove that an exclusion to coverage is applicable. *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 448 Mich. 395, 424–425, 531 N.W.2d 168 (Mich. 1995) (Boyle, J., concurring). Although exclusionary clauses are strictly construed in favor of the insured, "[c]lear and specific exclusions must be given effect." *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431 (Mich. 1992).

*Orchard*, 146 F. Supp. 3d at 885.

This case also involves a dispute regarding whether an exception to a policy exclusion applies. The following principles therefore govern:

"[A]n exception to an exclusion operates to preserve coverage despite the exclusionary clause. An exception to an exclusion does not grant coverage, but only operates to preserve coverage despite the exclusion." *Freeway Drive Invs., LLC v. Emps. Mut. Cas. Co.*, No. 16-12677, 2017 WL 6452232, at *6 (E.D. Mich. Dec. 18, 2017) (punctuation modified). . . . The insured has the burden of proof of showing that the exception to the exclusion applies. *Harrow Prod., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir. 1995).

*Arlene's Truck Salvage v. Northfield/Northland Ins. Co.*, No. 23-cv-11314, 2024 WL 4311468, at *2 (E.D. Mich. Sept. 25, 2024).

## III. Analysis

There is no dispute between the parties that the partial loss of power to Plaintiff's insured premises resulted in "direct physical damage"

to Plaintiff's covered property by rendering inoperable certain HVAC equipment, humidifiers, dehumidifiers, lighting fixtures, and pumps. (*See* ECF No. 24, PageID.378; ECF No. 27, PageID.602–603.) There is thus no dispute that there was "direct physical loss of or damage to Covered Property at the premises," as the policy requires. (*See* ECF No. 24-2, PageID.416.)

The parties disagree about whether the final requirement for coverage was met—*i.e.*, whether this physical loss of or damage to covered property was "caused by or result[ed] from any Covered Cause of Loss." (*See id.*) As set forth above, loss that is excluded from coverage cannot serve as a "Covered Cause of Loss." (*See id.* at PageID.404.) The Court must therefore decide (i) whether the claimed loss and/or damage falls within an exclusion from coverage and, (ii) if so, whether any exception to the exclusion restores coverage for the claim.

### A.   Utility Services Exclusion

Turning to the first issue, the Court agrees with Defendant that the Utility Services exclusion applies to Plaintiff's claimed losses. (*See* ECF No. 24, PageID.384–394.) The exclusion states that Defendant will not pay for "loss or damage caused directly or indirectly" by the "failure of

power . . . service supplied to the described premises, however caused," provided that the failure either (i) "[o]riginates away from the described premises" or (ii) "[o]riginates at the described premises . . . if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises." (ECF No. 24-2, PageID.404–405.) The exclusion applies in instances where there is a "lack of sufficient capacity and reduction in supply" and thus does not require a complete power outage. (*Id.* at PageID.405.)

These terms squarely apply to Plaintiff's claim. Plaintiff seeks coverage for loss or damage that was caused by the failure of power service supplied to its insured premises by DTE, a public utility company. Plaintiff does not dispute that the "failure involve[d] equipment used to supply the utility service to the described premises from a source away from the described premises." (*See, e.g.*, ECF No. 26, PageID.593 (acknowledging that a "DTE power line was damaged").) The exclusion applies even though the premises lost only a single "phase" of power rather than a complete outage. (*See* ECF No. 21, PageID.99 (portion of Plaintiff's motion acknowledging that the loss arose from the 'failure of one phase of a three-phase service"); ECF No. 24-2, PageID.405 (text of

exclusion).) *See Red Bird Egg Farms, Inc. v. Penn. Mfrs. Indem. Co.*, 15 F. App'x 149, 151, 153 (4th Cir. 2001) (concluding that an exclusion for "failure of power or other utility service" was triggered by "power problems" that included a transition from three-phase to single-phase power at a facility housing chickens following a loss of power due to a lightning strike).

Defendant points to two decisions in which courts in the Eastern District of Michigan held that similar exclusions barred coverage under similar circumstances. (*See* ECF No. 24, PageID.387.) In one case, the court determined that a similar "Off-Premises Services" exclusion barred coverage for losses incurred when the restoration of electrical service following a blackout led to a power surge that damaged certain of the plaintiff's equipment and caused the plaintiff to lose stock and inventory. *See Four Star Bros., Inc. v. Allied Ins. Co.*, No. 04-cv-73401-DT, 2006 WL 148754, at *1, *3, *6 (E.D. Mich. Jan. 19, 2006).[5] In the other case, the

---

[5] The "Off-Premises Services" exclusion stated, in relevant part: "We will not pay for loss or damage caused directly or indirectly by . . . [t]he failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises." *Id.* at *3. Like the exclusion at issue here, the Off-Premises Services exclusion included the following exception: "But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." *Id.* The policy defined

court determined that a similar "Power Failure" exclusion barred coverage for losses incurred by a grocery store during a blackout that affected several states. *See Lyle Enterprizes v. AXA Re Property & Casualty Co.*, No. 04-75099, 2005 U.S. Dist. LEXIS 28622, at *3, *10–13 (E.D. Mich. Nov. 18, 2005).

Plaintiff attempts to distinguish *Four Star Brothers* and *Lyle Enterprizes* on grounds that "none of the DTE equipment was damaged" in those cases, "unlike the present case where the DTE power line was damaged." (ECF No. 26, PageID.593; ECF No. 27, PageID.616.) This factual distinction does not help Plaintiff because the exclusion in Plaintiff's policy does not require damage to a power line or other equipment and rather is triggered by a failure of power to the premises, "however caused." (ECF No. 24-2; Page ID.405.)

In short, there is no genuine issue of material fact concerning whether Plaintiff's claimed losses fall within the terms of the policy's

---

"Covered Causes of Loss" as follows: "This [policy] insures against Risks of Direct Physical Loss unless the loss is . . . [e]xcluded . . . [or] [l]imited" by other terms of the policy. *Id.* The court found this exception inapplicable. *See id.* at *3–6.

15

Utility Services exclusion. Defendant has thus carried its burden to demonstrate the applicability of that exclusion.[6]

## B.   "Ensuing Loss" Exception

Because Defendant has established that Plaintiff's claim falls within the Utility Services exclusion, the burden shifts to Plaintiff to establish that an exception to this exclusion applies. *See Arlene's Truck Salvage*, 2024 WL 4311468, at \*2 (citing *Harrow Prod.*, 64 F.3d at 1020).

The Utility Services exclusion in Plaintiff's policy includes the following exception:

> [I]f the failure or surge of power . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

(ECF No. 24-2, PageID.405.) This type of exception is commonly referred to as an "ensuing loss" clause.[7] Such clauses began to be used in

---

[6] Because the Court finds the Utility Services exclusion applicable, it need not determine the applicability of the other exclusions that Defendant suggests may also bar coverage—namely, the exclusions for "[a]rtificially generated electrical, magnetic or electromagnetic energy," "weather conditions," and "[e]lectrical energy or disturbance." (*See* ECF No. 24, PageID.376–377.)

[7] Courts and commentators have used the term "ensuing loss clause" to refer to any exception that preserves coverage for a downstream cause of loss, regardless of whether the term "ensuing" appears in the exception. *See Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 511 (5th Cir. 2020) ("[N]umerous courts have recognized that 'resulting loss clauses and ensuing loss clauses are one

insurance policies after a 7.9-magnitude earthquake struck San Francisco in 1906, "toppl[ing] buildings" and "spark[ing] massive fires that ravaged the city for three days." *Bethany Boardwalk Grp. LLC v. Everest Sec. Ins. Co.*, 611 F. Supp. 3d 41, 53 (D. Md. 2020) (citing James S. Harrington, *Lessons of the San Francisco Earthquake of 1906: Understanding Ensuing Loss in Property Insurance*, 37 THE BRIEF 28, 28 (Summer 2008)). The earthquake and resulting fires collectively destroyed at least 28,000 buildings. *See id.* (citing Harrington, *supra*, at 28). "At the time, the garden-variety insurance policy covered fires but excluded coverage for losses caused by earthquakes." *Id.* (citing Christopher C. French, *The 'Ensuing Loss' Clause in Insurance Policies: The Forgotten and Misunderstood Antidote to Anti-Concurrent Causation Exclusions*, 13 NEV. L. J. 216, 216 (2012)). "As a result, many insurers refused to pay policy holders for fire damage, arguing that it was the product of the earthquake." *Id.* (citing French, *supra*, at 216). In response to new legislation enacted in the aftermath of this disaster, "insurance companies began inserting language in their policies to make clear that

---

and the same.'" (quoting *Viking Constr., Inc. v. 777 Residential, LLC*, 210 A.3d 654, 664–65 & n.9 (Conn. Ct. App. 2019))).

17

losses caused by fires would be covered, notwithstanding the earthquake exclusion." *Id.* at 54 (citing French, *supra,* at 216). Ensuing loss clauses were thus developed to "preserve coverage for insured losses . . . but not to resurrect coverage for excluded losses." *Id.*

Plaintiff argues that the "ensuing loss" exception applies to at least some of its losses. (*See* ECF No. 26, PageID.589–590; ECF No. 27, PageID.611–612.) Plaintiff attempts to support this argument with an affidavit prepared by Sulaiman Salam, who owns the company that was "involved in the repair and replacement of the HVAC equipment damaged at Plaintiff's business." (ECF No. 26-2, PageID.597.) Mr. Salam states that "it appeared that in observing the damaged equipment, that acid burnout had ensured after the loss of a single phase of the electrical service, causing high heat." (*Id.* at PageID.598.) Mr. Salam further states: "Acid burnout occurs when containments [sic], moisture, or high heat enter the refrigeration system causing the oil to break down and form inorganic acid." (*Id.*)

Defendant moves to strike Mr. Salam's affidavit on grounds that it offers what amounts to an untimely and unsupported expert opinion on

18

causation. (*See generally* ECF No. 28.)[8] Although the Court agrees with Defendant that Plaintiff did not timely or properly disclose Mr. Salam as an expert in this case, its disposition of Defendant's motion to strike ultimately has no bearing on the parties' cross-motions for summary judgment. Even if Mr. Salam's affidavit were admissible, his opinion that the loss of power led to "acid burnout" (ECF No. 26-2, PageID.598) would not create a genuine issue of material fact regarding (i) whether the power failure "resulted in a Covered Cause of Loss" or (ii) whether Plaintiff has claimed losses attributable to that "Covered Cause of Loss."

The Court's consideration of these issues is controlled by a 2010 Sixth Circuit decision applying Michigan law to a similar "ensuing loss" clause. *See TMW Enters., Inc. v. Fed. Ins. Co.*, 619 F.3d 574, 576–79 (6th Cir. 2010). In *TMW Enterprises*, the Sixth Circuit determined that, where an exception to an exclusion restores coverage for downstream causes of loss stemming from an excluded cause of loss, the exception bars an insurer from "deny[ing] coverage for losses not *proximately caused* by" an

---

[8] Defendant argues, among other things, that (1) Mr. Salam was not disclosed as an expert; (2) Mr. Salam's affidavit fails to meet the requirements of Fed. R. Evid. 702 and 703 and Fed. R. Civ. P. 26(a)(2); and (3) the opinion appears to contradict aspects of the opinion on causation offered by Plaintiff's disclosed expert, Mr. Kovarsky. (*See, e.g.*, ECF No. 28, PageID.627–629.)

excluded cause or, in other words, losses that were only "remotely traceable to an excluded cause." *Id.* at 579. It follows that such an exception does *not* restore coverage for losses that are proximately caused by an excluded cause of loss.

In *TMW Enterprises*, a plaintiff submitted an insurance claim to pay for the costs of addressing improperly constructed exterior walls that allowed water to enter its insured facility, "weakening the structural integrity of the building." *Id.* at 575. The plaintiff's insurance policy had a faulty-workmanship exclusion that, by its terms, did not apply to "ensuing loss or damage caused by or resulting from a peril not otherwise excluded." *Id.* The plaintiff argued that work to address the improperly constructed walls fell under that exception because, even if faulty workmanship allowed water to seep into the walls, the intruding water "amounts to a 'peril not otherwise excluded.'" *Id.* at 576.

The Sixth Circuit rejected the plaintiff's interpretation of the exclusion because it "would create a virtual, if not complete, exclusion of the exclusion." *Id.* Put differently: "TMW's chain of reasoning—that water technically was the final causative agent of the damage, as opposed to the faulty construction, that 'water damage' is not specifically excluded

20

from the policy, that coverage accordingly applies—essentially undoes the exclusion." *Id.* This is because the "number of possibilities for last-in-time 'but for' causes of damage are limited only by the imagination of the reader." *Id.* at 576–77. The court observed that the plaintiff's reading of the exception would, for instance, allow a policyholder to avoid a faulty-workmanship exclusion in a case where a poorly constructed beam fell and smashed the floor below, because the beam could not have fallen without the force of gravity, and gravity was not specifically excluded by the policy. *See id.* at 577.

In light of the foregoing, the Sixth Circuit concluded that only "independent, non-foreseeable losses caused by faulty construction" could trigger the "ensuing loss" exception to the policy's faulty-workmanship exclusion. *Id.* at 578. The exclusion would thus apply (and coverage would be barred) if the damage for which coverage was sought "came 'natural[ly] and continuous[ly]' from the faulty workmanship, 'unbroken by any new, independent cause.'" *Id.* (quoting *Mich. Sugar Co. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 107 Mich. App. 9, 14 (1981)). "But if, on the other hand, the later-in-time loss flows from a non-foreseeable and non-excluded cause, it is covered." *Id.*

21

Applying that interpretation to the facts before it, the Sixth Circuit concluded that, "because defective wall construction naturally and foreseeably leads to water infiltration, the language of the exclusion, not the exception to the exclusion, ought to apply." *Id.* But it remanded to the District Court to give the insured an opportunity to seek coverage for "losses not *proximately* caused by faulty workmanship." *Id.*[9]

This case raises the same issue that was before the Sixth Circuit in *TMW Enterprises*. The exception here applies when a "failure or surge of power . . . results in a Covered Cause of Loss." (ECF No. 24-2, PageID.405.) Plaintiff suggests that this exception is triggered because an excluded cause of loss (the loss of power) led to the "acid burnout" identified by Mr. Salam. (*See* ECF No. 26, PageID.589–590; ECF No. 27, PageID.611–612.) Under *TMW Enterprises*, acid burnout could trigger the exception to the Utility Services exclusion only if it was *not* the "natural[]" and "foreseeabl[e]" result of the temporary, partial loss of

---

[9] The parties settled the case on remand and, thus, the District Court did not ultimately resolve whether any alleged losses were *not* proximately caused by faulty workmanship. *See* Order Administratively Closing Case, *TMW Enters., Inc. v. Fed. Ins. Co.*, No. 07-12230 (E.D. Mich. Aug. 9, 2011), ECF No. 97; Stipulated Order of Dismissal with Prejudice, *TMW Enters.*, No. 07-12230 (E.D. Mich. May 3, 2012), ECF No. 98.

power to the premises. Plaintiff bears the burden of proof on this issue, and it presents no evidence to support the conclusion that acid burnout was only "remotely traceable" to the loss of power. (*See* ECF No. 26-2, PageID.598 (affidavit of Mr. Salam that indicates in a few terse sentences that the partial loss of a phase of electrical service caused high heat which in turn led to acid burnout when the high heat entered the HVAC unit's refrigeration system).) In short, Mr. Salam's affidavit does not create a genuine issue of material fact regarding whether Plaintiff's losses were only "remotely traceable to an excluded clause." *TMW Enters.*, 619 F.3d at 579; *see also Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 511–13 (5th Cir. 2020) (holding that losses that resulted from "welding slag" damaging glass windows did not trigger an "ensuing loss" exception to a faulty-construction exclusion because "the welding project did not 'result in' a separate covered peril; the welding project and attendant falling slag was *itself* the peril").

Plaintiff attempts to distinguish *TMW Enterprises* on grounds that (1) it involved faulty construction rather than a power outage; (2) it involved a faulty-workmanship exclusion and not the Utility Services exclusion at issue here; and (3) the clause it examined was not identical

to the clause in this case. (*See* ECF No. 26, PageID.590–591; ECF No. 27, PageID.612–613.) These arguments are not persuasive. The specific type of loss and exclusion have no bearing on the question facing this Court. Further, Plaintiff has not identified any material differences between the "ensuing loss" exception examined in *TMW Enterprises* and the exception here that would warrant interpreting this clause differently. Like *TMW Enterprises*, this case examines an exception that applies when an excluded cause of loss leads to a non-excluded cause of loss. Both cases raise the issue of whether such an exception can be triggered by *any* non-excluded "last-in-time 'but for' cause[] of damage," where the "number of possibilities" for such last-in-time causes are "limited only by the imagination of the reader." *TMW Enters.*, 619 F.3d at 576–77; *cf. Balfour Beatty Constr.*, 968 F.3d at 511 ("[N]umerous courts have recognized that 'resulting loss clauses and ensuing loss clauses are one and the same.'" (quoting *Viking Constr., Inc. v. 777 Residential, LLC*, 210 A.3d 654, 664–65 & n.9 (Conn. Ct. App. 2019))).[10]

---

[10] Plaintiff also notes that *TMW Enterprises* was "sent back to the lower court to determine factually whether there was an ensuing loss independent from faulty construction." (ECF No. 26, PageID.590; ECF No. 27, PageID.613.) That fact does not help Plaintiff given that the Court is presently making its own determination

In sum, Plaintiff has not carried its burden of demonstrating that the power failure that affected its premises resulted in an independent "Covered Cause of Loss" that in turn caused loss or damage for which it seeks coverage. *See Four Star Bros.*, 2006 WL 148754, at \*3–4 (holding that a similar Off-Premises Services exclusion barred coverage and noting that there was no evidence that the power failure in that case had led to a "Covered Cause of Loss"); *Lyle Enterprizes*, 2005 U.S. Dist. LEXIS 28622, at \*10–13 (reaching the same conclusion with respect to a "Power Failure" exclusion). The Court thus holds that the Utility Services exclusion bars coverage of Plaintiff's losses. This holding resolves the question of whether Defendant breached its contract with Plaintiff by denying coverage for Plaintiff's losses and, thus, entitles Defendant to summary judgment in this case.

## IV.   Conclusion

For the reasons set forth above, the Court DENIES Plaintiff's motion for summary judgment (ECF No. 21), GRANTS Defendant's motion for summary judgment (ECF No. 23), and DENIES AS MOOT

---

regarding whether Plaintiff has presented a genuine dispute of fact about whether the power outage in this case resulted in an independent Covered Cause of Loss.

Defendant's motion to strike the affidavit of Sulaiman Salam (ECF No. 28).

IT IS SO ORDERED.

Dated: May 26, 2026          s/ Judith E. Levy
         Ann Arbor, Michigan     JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

26